UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 09-61590-CIV-MORENO

COACH SERVICES, INC.,

    Plaintiff,

vs.

777 LUCKY ACCESSORIES, INC., JOSHUA GLICKMAN, SHAUL ASHKENAZY, and EZRA SAIG,

    Defendants.
_____/

## ORDER ON SUMMARY JUDGMENT MOTIONS

Plaintiff, Coach Services, Inc., is suing Defendants 777 Lucky Accessories, Inc., Joshua Glickman, Shaul Ashkenazy, and Ezra Saig for trademark infringement, false designation of origin, trademark dilution, common law unfair competition, and violation of Florida's Deceptive and Unfair Trade Practices Act, over Defendants' sunglasses which allegedly contain similar trademarks that are owned by Plaintiff. Before the Court, are cross-motions for summary judgment on whether Defendants' goods are counterfeit. Defendants also move for summary judgment arguing that the individual Defendants do not have personal liability for trademark infringement. For the reasons stated below, the Court finds that neither party satisfied the likelihood of confusion test used to determine whether the goods are counterfeit, and therefore, the Court denies both parties' motions as to the issue of whether the goods are counterfeit. As to the second part of Defendants' motion, the Court finds Defendants have presented sufficient evidence that the individual Defendants are not personally liable for trademark infringement. Defendants presented declarations and deposition

testimony, and Plaintiff failed to oppose that evidence with a significant showing of the existence of a triable issue of fact. The individual Defendants, Joshua Glickman, Shaul Ashkenazy, and Ezra Saig, do not have personal liability for trademark infringement, which is Plaintiff's first count. The individual Defendants still remain in the case as to the rest of Plaintiff's counts alleged in the complaint.

## BACKGROUND

Plaintiff is a recognized manufacturer of goods including handbags, apparel, and accessories. Since as early as 2001, Plaintiff has used its "C" mark in connection with the manufacture and sale of its merchandise. Plaintiff's "C" mark consists of a repeating pattern featuring a stylized letter "C" in different orientations. (Decl. Pyatt ¶ 5.) Plaintiff registered the "C" mark with the United States Patent and Trademark Office in 2004 with registration number 2,832,589, for use in connection with "sunglasses and eyeglass cases." Plaintiff uses this "C" mark in a line of sunglasses called the "Charlee" model. The "Charlee" model is a semi-frameless design with Plaintiff's "C" mark that incorporates large tapered arms emblazoned in rhinestones.

Around February 2008, Officer Richard Tallent, of the United States Customs and Border Protection ("CBP"), targeted and intercepted a container from China imported by Defendants into Port Everglades, Florida. Officer Tallent inspected the goods and found what he considered to be counterfeit Coach sunglasses. (Tallent Dep. 38:4-10; 39:10-14.) When Officer Tallent failed to obtain the documents he requested from 777 Lucky Accessories, Inc.'s broker, he proceeded to conduct an inventory of the entire shipment and isolated various samples of the merchandise to detect for possible intellectual property rights violations. (Tallent Dep. 41:3-11.) Upon review of the merchandise, the goods were seized. Officer Tallent retained two pairs of sunglasses as samples,

one black and one white, both in the same style. (Tallent Dep. 58:19-59:8.) In April 2008, Plaintiff received a Notice of Seizure from the United States and Border Protection, informing Coach that it had seized approximately 6,900 pairs of sunglasses from Defendant 777 Lucky Accessories, Inc. "because the articles infringed on a trademark of Coach . . . ." (Pl.'s Ex. C.) Then on October 2009, Plaintiff filed suit against Defendants. Both parties move for summary judgment and seek a determination from the Court as to whether the goods in question are counterfeit. Defendants move for summary judgment as to whether the individual Defendants are personally liable for trademark infringement.

## ANALYSIS

The first issue before the Court is whether the goods at issue are a counterfeit of Plaintiff's registered trademark. The second issue before the Court is whether the individual Defendants are personally liable for the alleged trademark infringement.

Summary judgment is authorized when there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Then the burden shifts to the party opposing the motion, who must set forth specific facts and establish the essential elements of the case on which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The party opposing the motion must present more than a scintilla of evidence in support of its position and it "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed. R. Civ. P. 56(c). Rule 56(e) mandates that a party moved against respond with affidavits, depositions, or otherwise to reflect that there are material facts which must be presented to a jury for resolution. *See Adickes*, 398 U.S. at 159-61.

When the record cannot support a finding by the trier of fact for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. *See Matsushita Elec. Indus. Co.,v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Under the Lanham Act, 15 U.S.C. § 1114(1), a defendant is liable for infringement, if, without consent, he uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion or to cause mistake, or to deceive.' Thus, to prevail, a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion." *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (citations omitted). The Lanham Act defines a "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

I.

Plaintiff asked the Court to find that Defendants' products are counterfeit as a matter of law. As stated above, to find a defendant liable for using counterfeit goods in commerce, the plaintiff must show that defendant's mark is likely to cause consumer confusion. The Eleventh Circuit has found likelihood of confusion as a matter of law when the plaintiff's proof on that issue was "so strong that any finding other than one of likely confusion would be clearly erroneous." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984). Yet, even though likelihood of confusion may be decided as a matter of law, it is generally a question of fact. *See Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) (citing *Conagra*, 743 F.2d at 1514-15); *see also Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 840 n.16 (11th Cir. 1983)

(clarifying that the likelihood of confusion test is a question of fact in the Eleventh Circuit). Nonetheless, if the moving party demonstrates that there is no genuine issue of material fact at the summary judgment phase, then the motion may be granted. *See Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC* ---F.3d----, No. 08-16179, 2010 WL 1816170, at *6 (11th. Cir. May 7, 2010).

The Court's focus on Plaintiff's partial motion for summary judgment is on the element of confusion. The seven-factor weighted balancing test for likelihood of confusion is the following: "(1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. 'Of these, the type of mark and the evidence of actual confusion are the most important.'" *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1239 (11th Cir. 2008) (citing *Frehling,* 192 F.3d at 1335).

In support of its position, Plaintiff lists all the physical similarities between its sunglasses and Defendants' sunglasses. The comparisons presented by Plaintiff does not, however, establish that Defendants' goods are in fact counterfeit. For the Court to find that Defendants' goods are counterfeit and thus violating the Lanham Act, Plaintiff must demonstrate that its mark has priority and that Defendants' mark is likely to cause consumer confusion. Plaintiff's argument that the physical similarity between the two goods makes Defendants' goods counterfeit as a matter of law is not sufficient support for its motion for summary judgment. Plaintiff also offers Officer Tallent's testimony and the CBP's Notice of Seizure letter as proof that the goods are counterfeit, but these statements do not measure the likelihood of confusion. Plaintiff fails to offer any deposition testimony, affidavits, or exhibits to support its position that establish the elements of the likelihood

of confusion test. *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 (11th Cir. 1991) (citing 15 U.S.C.A. § 1114(1)(a)) (explaining that the Lanham Act prohibits the "use in commerce of a counterfeit trademark in a manner likely to cause confusion").

Here, as the moving party, Plaintiff, is also the party with the burden of proof on the issue of trademark infringement and "it is important to remember [that] the non-moving party must produce its significant, probative evidence only after the movant has satisfied its burden of demonstrating there is no genuine dispute on any material fact." *Chanel*, 931 F.2d at 1477 (citations omitted). Plaintiff's evidence does not demonstrate an absence of a genuine dispute over the likelihood of confusion, and therefore, Defendants do not need to present significant probative evidence of the existence of a triable issue of fact. *See id.*

However, because Defendants also move for summary judgment on the same issue as Plaintiffs, they must satisfy the summary judgment burden of a moving party. Defendants, like Plaintiffs, also fail to meet that burden. Defendants' arguments suffer from the same infirmity as Plaintiff's arguments. Defendants compare the two goods and lists all the differences arguing that those differences eliminate the possibility that its goods are counterfeit. Defendants fail to explain or present evidence as to why there is no likelihood of confusion between the goods. Therefore, the Court similarly denies Defendants' motion for summary judgment as to the counterfeit issue for failure to present sufficient evidence in support its claim.

II.

The second issue before the Court is whether the individual Defendants, Joshua Glickman,

Shaul Ashkenazy, and Ezra Saig, are personally liable for the alleged trademark infringement. In their motion for summary judgment, Defendants argue that the individual Defendants had no involvement with the alleged infringement, and therefore, should be dismissed because they are not personally liable.

Individuals, as well as corporations, may be liable for trademark infringement under the Lanham Act. *See Chanel*, 931 F.2d at 1477 (citations omitted). Obviously a corporation acts through an individual and if the corporation is responsible for infringement that infringement was done by someone, either an employee or an officer of the corporation. *See id.* (quoting *Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968).[1] Personal liability attaches "[i]f an individual actively and knowingly caused the infringement" such that he was a "moving, active, conscious force." *Chanel*, 931 F.2d at 1477-78 (citations omitted). Yet, the "individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the *decision* to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Id.* at 1478 n.8.

The individual Defendants, Joshua Glickman, Shaul Ashkenazy, and Ezra Saig, are the only three shareholders of the company. The individual Defendants' testimony throughout each of their depositions is that they have little to no involvement in the decisions of what merchandise to buy. They testified that they are merely passive investors and do not actively manage 777 Lucky Accessories Inc. Instead, they explain that the company is managed by Mr. Maimon Levy who is

---

[1] All Fifth Circuit decisions handed down prior to the close of business on September 30, 1981, are binding precedent upon the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

a salaried employee. Mr. Levy testified that he makes the decisions as to which trade shows to attend, how to arrange the catalog, and what merchandise to buy. Mr. Levy is the one who manages the daily operation of 777 Lucky Accessories, Inc., and each of the three individual Defendants testify that they have never been in charge of nor have they managed any staff at 777 Lucky Accessories, Inc.

Because personal liability rests on the individual's active knowledge of the infringement, the Court will review each Defendants' activities in the company individually. Although the individual Defendants' testimony reveals little involvement in the daily operations of the company, the facts below discuss the activities that connect these individual Defendants to the company.

As for Mr. Glickman's involvement with the company, Plaintiff points to his presence in China at the same time that Mr. Levy was in China purchasing goods on behalf of 777 Lucky Accessories, Inc. (Glickman Dep. 59:9-25) as evidence of actively causing the infringement. Plaintiff also highlights that Mr. Glickman was aware of and briefly saw the company's catalog which contains images of the allegedly infringing goods. Mr. Glickman also reviews the monthly statements of the company's American Express credit card, which Mr. Levy has authorization to use. Before Mr. Levy travels to China he "briefly" informs Mr. Glickman about the merchandise he is going to buy and shows Mr. Glickman samples. (Glickman Dep: 50:8-20.)

As for Mr. Ashkenazy's involvement in the company, he testified that he was in China when Mr. Levy was there purchasing inventory for 777 Lucky Accessories Inc. Mr. Ashkenazy explains that he was in China exclusively on behalf of another company and did not participate in the purchasing decisions of Mr. Levy. Mr. Ashkenazy also testified that he looks at the brochures of the tradeshows after, and not before, Mr. Levy makes his purchases. (Ashkenazy Dep. 113:16-24.) He

testified that he does not have any involvement in what Mr. Levy purchases. (Ashkenazy Dep. 113:5-11.)

And finally as to Mr. Saig, he testified that Mr. Glickman, Mr. Ashkenazy, and Mr. Levy, all travel together to trade shows, but that Mr. Levy had his own separate booth at the tradeshow. (Saig Dep. 38:5-18.) Mr. Saig's testimony indicates that he is not involved in the business decisions as to what is bought, what is sold, and that he does not discuss with Mr. Levy what he is selling. (Saig Dep. 40:2-6.)

A review of these activities indicate that despite Plaintiff's arguments to the contrary, these activities do not connect Mr. Glickman, Mr. Ashkenazy, or Mr. Saig, to the purchase or promotion of counterfeit goods. Nor do these actions indicate that any of them were an active moving force in the decision to engage in infringing acts.

Still, Plaintiff maintains that there are disputes over material facts that prevent summary judgment by pointing to allegations or denials of the adverse party's testimony. Yet this is insufficient. *See* Fed. R. Civ. P. 56(c). Plaintiff must produce significant, probative evidence in the form of affidavits, depositions, or otherwise to reflect that there are material facts which must be presented to a jury for resolution. *See Adickes*, 398 U.S. at 159-61. Questioning the credibility of the deponents and raising speculation over whether the individual Defendants were involved in the decisions that led to the alleged infringement, is not sufficient to withstand summary judgment on this issue. Thus, the Court grants Defendants' motion for summary judgment as to the personal liability issue and finds that the individual Defendants are not personally liable for Count I, trademark infringement. Accordingly, it is

**ADJUDGED** that Plaintiff's Partial Motion for Summary Judgment is DENIED, Defendants' Motion for Summary Judgment as to the counterfeit issue is DENIED, and Defendants' Motion for Summary Judgment as to the issue of personal liability for trademark infringement is GRANTED.

DONE AND ORDERED in Open Court at Miami, Florida, this 3 day of June, 2010.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record