IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case No. 09-cv-61590-JAG

COACH SERVICES, INC., )
)
Plaintiff, )
)
vs. )
)
777 LUCKY ACCESSORIES, INC., )
JOSHUA GLICKMAN, SHAUL )
ASHKENAZY, and EZRA SAIG, )
)
Defendants.
_______________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION OF DEFENDANTS FOR RECONSIDERATION OF THE RULE 56 ORDER**

Plaintiff, Coach Services, Inc. ("Coach"), by and through its undersigned attorneys and pursuant to Rule 7.1(C) of the Local Rules of the Southern District of Florida, serves this response in opposition to the motion (the "Motion")( D.E. #82) by the corporate defendant, 777 Lucky Accessories, Inc. ("777 Lucky Accessories"), and the individual defendants, Joshua Glickman, Shaul Ashkenazy, and Ezra Saig, for reconsideration of the Court's Rule 56 Order (D.E. # 64).

**Introduction**

Three weeks before the second trial setting, the defendants have demanded dismissal based upon the doctrine of collateral estoppel. The technical defense of collateral estoppel is not available to defeat Coach's meritorious claims, including its claim for statutory damages under the Lanham Act. Coach's claims are based upon a seizure of counterfeit sunglasses by Customs

Border Protection ("Customs") in March 2009. The corporate defendant was caught "red-handed," importing "knock-off" sunglasses that display Coach's Signature "C" mark. [1]

There are four reasons why the Court should deny the Motion. First, Registration Number 2,832,589 (the "'589 Reg.") with the United States Patent and Trademark Office (the "USPTO") covers the use of Coach's Signature "C" mark on sunglasses. Second, while an adverse, interlocutory ruling on this issue was contained in a partial summary judgment on damages in *Coach, Inc. v. Asia Pacific Trading Co., Inc.*, 676 F. Supp. 2d 914 (C.D. Cal. 2009) (Gutierrez, J.), that incorrect ruling was reached without a trial, on a very sparse record. The Motion fails to bring to this Court's attention the proper factors for determining whether the ruling in *Asia Pacific* has preclusive effect in this case. According to these factors, the interlocutory ruling in *Asia Pacific* does not give rise to the defense of collateral estoppel. Third, there was absolutely no duty to disclose Registration Number 3,695,290 (the "'290 Reg."), and Coach had no obligation to disclose the interlocutory ruling in *Asia Pacific*. The defendants are simply embellishing the Motion, calling this a "fraud on the Court." Fourth, the application of the defense of collateral estoppel will not result in any judicial economy in this case.

## Background

The facts referred to below are established in the Plaintiff's Statement of Material Facts, etc. (D.E. # 88), which is referred to and cited herein as "Plaintiff's Statement, ¶ __."

**Details re: the '589 Reg.:** In December 2001, Coach applied for the '589 Reg. pursuant to subsection 1(b) of the Lanham Act, 15 U.S.C. § 1051(b). *Plaintiff's Statement*, ¶ 1(A). Pursuant to 1(b), Coach needed only to declare its intention to use the Signature "C" mark on the

[1] This is not the defendants' first attempt to avoid a jury trial. They also argued that the plaintiff had no right to a jury trial based upon the defendants' unilateral decision to waive their own right to one. D.E. # 65. This argument also was rejected by Judge Moreno. (D.E. # 76.)

goods identified in the application. Various classes of goods were identified in the application, including, International Class ("I.C.") 9 goods, *viz.*, "sunglasses and eyeglass cases." *Plaintiff's Statement*, ¶ 1(A). Pursuant to subsection 1(d) of the Lanham Act, after obtaining several extensions, Coach filed a statement of use in July 2003, declaring under oath that it was then using the mark on the goods specified in its statement of use, including, without limitation, "sunglasses and eyeglass cases" and also declaring the first use date for each class of goods. *Plaintiff's Statement*, ¶ 1(C). Coach has been continuously using the Signature "C" mark, on both sunglasses and eyeglass cases, since a date that preceded the sworn statement of use. *Plaintiff's Statement*, ¶ 1(D).[2]

On April 13, 2004, the '589 Reg. was issued to Coach, and the Signature "C" mark was placed on the principal register of the USPTO. *Plaintiff's Statement*, ¶ 1. Since that date, pursuant to subsection 33(a) of the Lanham Act, 15 U.S.C. § 1115(a), the '589 Reg. has been *prima facie* evidence of Coach's exclusive right to use the Signature "C" mark on sunglasses, among other things. Earlier this year, the '589 Reg. became "incontestable," *Plaintiff's Statement*, ¶ 1(E), meaning that the '589 Reg. is now conclusive evidence of Coach's exclusive right to use the Signature "C" mark on sunglasses.

[2] It is common practice in the USPTO to state the earliest use date for one of the goods in each class. *Plaintiff's Statement*, ¶ 1(C), ¶ 5; *see* 37 C.F.R. §§ 2.34(a)(1)(v), 2.88(c). Moreover, "the exact date of claimed first use is immaterial to the grant of a registration, just so long as the first use in fact preceded the filing date of a use based application." 6 Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31.74 (4th ed. Sept. 2010) [hereinafter *McCarthy*]. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1210 (11th Cir. 2008) (same). Coach was not required to make a statement about prior use of the goods specified in the '589 Reg. until Coach filed the sworn statement of use in July 2003. *See Stoller v. Sutech U.S.A., Inc.*, 199 Fed. Appx. 954, 957 (Fed. Cir. 2006) ("An intent-to-use application does not rely on or require any prior use of the mark, and [applicant] was not required to prove any priority date based on its first use of the mark."). Indisputably, months before filing the statement of use in July 2003, Coach already was using the Signature "C" mark on both sunglasses and eyeglass cases.

**The Proper Construction of the '589 Reg.:** According to Coach, the words "sunglasses and eyeglass cases," as used in the application and statement of use for the '589 Reg., were intended to describe two distinct categories of goods, *viz.*, "sunglasses" and "eyeglass cases." These two categories are approved descriptions in the USPTO's Acceptable Identification of Goods and Services Manual (AIGSM). *Plaintiff's Statement*, ¶ 1(B)-(C). The AIGSM is a manual that helps the public correctly describe the goods and services specified in trademark applications. USPTO, *Trademark Manual of Examining Procedure* § 1402.04 (6th ed., rev. 2, May 21, 2010) [TMEP], http://tess2.uspto.gov/tmdb/tmep/, *followed in In re Sones*, 590 F.3d 1282, 1289 (Fed. Cir. 2009). According to the AIGSM, http://tess2.uspto.gov/netahtml/tidm.html, the phrase "sunglasses and eyeglass cases" is not an acceptable way to describe a single category of goods in a trademark application. *Plaintiff's Statement*, ¶ 1(B). In fact, the words "sunglasses and eyeglass cases" were never intended to describe a single category of goods. *Plaintiff's Statement*, ¶ 1(B).

**The *Asia Pacific* Ruling:** On November 12, 2009, a California district court ruled that the phrase "sunglasses and eyeglass cases," as used in the '589 Reg., does not include sunglasses. The ruling was made without an evidentiary hearing. *Plaintiff's Statement*, ¶ 11(A). The extensive evidence before this Court was outside the ken of Judge Gutierrez when he decided the motion for partial summary judgment on damages in *Asia Pacific*. *Id.* The interlocutory ruling in *Asia Pacific* was not appealed, *id.*, ¶ 11(C), nor could it have been appealed. The district court never suggested that its ruling would be given preclusive effect, nor has any other court ever given it such effect. *Plaintiff's Statement*, ¶ 11(D). Even though the fifteen-page decision in Asia Pacific contained several other rulings that were analyzed at length, the interlocutory ruling in question, *i.e.*, that "the words 'sunglasses and eyeglass cases' should

be understood . . . as describing the kinds of 'cases' covered," was made in a footnote bereft of any explanation beyond Coach's failure to counter the arguments made by Sunglass Experts, Inc. *Plaintiff's Statement*, ¶ 11(B).

To suggest that the words "sunglasses" and "eyeglass" are both attributive adjectives, modifying the noun "cases," is to defy ordinary rules of grammar. It is a basic rule of grammar to "[e]xpress coordinate ideas in similar form." W. Strunk, Jr. & E.B. White, *The Elements of Style*, pp. 26-27 (1979 3d ed.). "This principle . . . of parallel construction . . . requires that expressions similar in content and function be outwardly similar." *Id.* The "parallel construction" principle is often followed to ensure the proper construction of statutes, contracts, and other writings. *King v. Katzenbach*, 360 F.2d 305, 306 (5th Cir. 1966) (construction rejected because it "does not meet the elementary rule of English grammar that the coordinating conjunction 'or' links two parallel and equal sentence elements.") *Accord Evans v. U.S.*, 504 U.S. 255, 289 (1992) (construction accepted because it "comports with correct grammar and standard usage by setting up a parallel[ism] . . . ."); *see also In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983) ("A [patent] claim must be read in accordance with the precepts of English grammar.").

In this case, the rule of parallel construction would be violated if the Court were to follow *Asia Pacific's* ruling on the scope of the '589 Reg. This is because the two attributive adjectives in the phrase "sunglasses and eyeglass cases" are a different number, one plural, the other possessive, *i.e.*, "sunglass<u>es</u>" and "eyeglass." (Emphasis added). Also, part of the resultant phrase, after attribution of the first adjective, simply makes no sense: "sunglasses . . . cases." Indisputably, the collateral estoppel argument advanced by the defendants depends upon this

flawed construction: "The reality is that 1st Reg. '589 merely covers 'sunglasses cases' . . . ." *Motion*, p. 12.

Besides the rules of grammar, this misconstruction of the '589 Reg. also would violate the AIGSM. The manual does not recognize the phrase, "sunglasses and eyeglass cases," or the malapropism, "sunglasses cases." *Plaintiff's Statement*, ¶ 1(B)-(C). Finally, this misconstruction would be inconsistent with the intention of Coach and its actual use of the Signature "C" mark on sunglasses since December 2002. *Id.*, ¶ 1(B)-(D).

**The '290 Reg.:** Nine months before the interlocutory ruling in *Asia Pacific*, on March 10, 2009, Coach made an application (the "2009 Application") for the '290 Reg. under subsection 1(a) of the Lanham Act, 15 U.S.C. § 1051(a). *Plaintiff's Statement*, ¶ 5. Coach sought to register additional I.C. 9 goods, including "eyeglasses" and "frames for sunglasses and spectacles." *Id.* The overlap between the '589 Reg. and the 2009 Application was to ensure the earliest use date for all of the I.C. 9 goods, consistent with common practice. *Id.*; *see also supra* note 2. The overlap was brought to the USPTO's attention in the 2009 Application in which Coach stated that the '589 Reg. was a "related prior registration." *Plaintiff's Statement*, ¶ 5.

**This Case:** The defendants accuse Coach and its attorneys of fraud upon the Court based upon the non-disclosure of the '290 Reg. and the *Asia Pacific* ruling. These accusations are unjustified. The '290 Reg. was not relevant to Coach's pleaded claims. *Plaintiff's Statement*, ¶ 9. The complaint in this case (D.E. # 1) was filed on October 5, 2009, one week before the '290 Reg. was issued by the USPTO. The defendants' infringement and counterfeiting took place before the 2009 Application was even made. *Plaintiff's Statement*, ¶ 4(B) *with* ¶ 5. Thus, there was no reason for Coach to raise the '290 Reg. in its complaint or the Rule 26 disclosures at the outset of this case or in the motion for summary judgment and supporting papers. *Plaintiff's Statement*, ¶ 9.

Likewise, the defendants made no inquiry in discovery that even remotely touched upon the '290 Reg.. *Plaintiff's Statement*, ¶ 9(A)-(B). Thus, the defendants are making personal attacks upon Coach and its counsel without a valid basis for doing so.

Similarly, neither Coach nor its attorneys had a duty to disclose the interlocutory decision in *Asia Pacific*. No discovery request implicated this interlocutory ruling or even the case itself. *Id.*, ¶ 11. Further, the inadvertent non-disclosure of an interlocutory ruling in another district court in a different circuit is hardly required under the applicable professional rule. R. Regulating Fla. Bar 4-3.3 ("fail[ure] to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by the opposing counsel"). While the defendants do not raise Local Rule 3.8 of the Southern District of Florida in either the Motion or the Defendant's Statement of Material Facts, in the spirit of candor and out of an abundance of caution, the undersigned considers why this rule is <u>not</u> applicable. This action could not have been stayed, transferred or consolidated, based upon a case pending in California, because of, among other things, the complete incongruity of the defendants. The defendants in this case are not making a *res judicata* argument based upon *Asia Pacific*. As shown below, there is no valid collateral estoppel argument. Thus, assuming *arguendo* that Rule 3.8 was ever applicable, none of the policy concerns that underlie this rule was present in this case. Any technical and inadvertent non-compliance with Rule 3.8, before Asia Pacific was finally dismissed in February 2010, caused no prejudice to the defendants, who are merely making much ado about nothing.

## <u>**Argument and Authorities**</u>

### ***1. No valid basis for reconsideration has been stated.***

The remedy of reconsideration is an extraordinary remedy to be granted "sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (Gold,

J.). The defendants correctly state the test for reconsideration: (1) an intervening change in the law, (2) the discovery of new evidence, (3) prevention of clear error or manifest injustice, and (4) patent misunderstanding by the court of a litigant's argument. *Motion*, p. 2 (citing, *inter alia*, *Burger King*, 181 F. Supp. 2d at 1370). The burden of proving a valid ground is on the litigant who seeks reconsideration. *U.S. v. Adamson*, 00-cr-52-RH, 2007 WL 2121923, *17 (N.D. Fla. July 23, 2007) (Hinkle, J.) ("it is not asking too much that the burden of showing the essential unfairness be sustained by him who claims such injustice"); *see also Aviles v. Charles Schwab & Co., Inc.*, 09-80794-Civ, 2010 WL 1433369, *5 (S.D. Fla. April 9, 2010) (Zloch, J.). The defendants have not met their burden. They seem to concede in the Motion that neither the first nor fourth prongs of the test are met. While the defendants imply that the Motion meets the second and third prongs; in fact, neither prong is met.

The *Asia Pacific* ruling is not newly discovered evidence, but merely a published decision that defense counsel could have located months ago. According to *Burger King*, "[a] motion for reconsideration should not be used to present authorities available at the time of the first decision . . . ." *Id.* at 1369. The denial of the defendants' Rule 56 motion was not an injustice. First, the ruling in *Asia Pacific* was wrong for the reasons explained *supra* pp. 4-6, and the decision is not entitled to any preclusive effect, according to the law in this circuit. *Infra* pp. 11-15. Second, Coach is the litigant who will be prejudiced by the late raising of a technical issue by defendants who are simply looking to get off "scot-free" on a technicality. That result alone would be an injustice. The defendants imported counterfeit sunglasses into this country, intending to dispose of them for "big" profit, all to the detriment of Coach and its famous mark.[3]

[3] This is not the defendants' first run-in with the Lanham Act. The general manager of the corporate defendant is a serial-infringer, aided and financed by the individual defendants, who share the ill-gotten gains of the corporate defendant with him.

***2. The Asia Pacific ruling is not sufficiently firm to be given preclusive effect.***

The defendants fail to identify the factors to be considered for determining whether to apply collateral estoppel in this situation. All cases cited in the Motion concern the invocation of collateral estoppel in one action after the entry of a final judgment in another action that involves the exact same parties. *Motion*, pp. 4-5 (analyzing *Lu Soro v. Citigroup*, 287 Fed. Appx. 57, 58 (11th Cir. 2008); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1089 (Fed. Cir. 1984); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1567-68 (Fed Cir. 1983).

This Circuit uses a flexible standard to decide if an interlocutory ruling is "sufficiently firm" to be afforded preclusive effect in a second action that involves some but not all of the parties in the first action. *Christo v. Padgett*, 223 F.3d 1324, 1339 & n.47 (11th Cir. 2000) (declining to apply collateral estoppel) (citing to Restatement (Second) Judgments § 13 (1982)), *followed in In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1253-54 (11th Cir. 2006) (following *Christo* and declining to apply collateral estoppel); *RF Del., Inc. v. Pacific Techs., Inc.*, 326 F.2d 1255, 1261 (Fed. Cir. 2003) (same); *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1325 (Fed. Cir. 2003) (declining offensive use of collateral estoppel) ("The *Christo* case makes clear . . . that the Eleventh Circuit follows the more flexible approach applied by the Restatement of Judgments. . . ."). [4]

In *Christo*, the Eleventh Circuit used the doctrine of collateral estoppel to end a decade of litigation in several courts. 223 F.3d at 1328. Christo claimed that a "straw-man" agreed to purchase bank stock for him. *Id.* at 1328-29. Christo later filed for bankruptcy, and his trustee

[4] In the Ninth Circuit, the defense of collateral estoppel is much narrower. The defense is not applied unless the prior action was ended by a final judgment on the merits and an issue decided in the prior action arises in a second action between the same parties. *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 925 n.11 (9th Cir. 2009). Thus, if this case were before Judge Gutierrez, he would not give his own ruling preclusive effect, nor would the Federal Circuit. *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003) ("on general principles of claim preclusion . . . we apply the law of the regional circuit in which the district court sits").

asserted the debtor's claims against the "straw-man." *Id.* at 1329.  Meanwhile, the debtor's family sued the "straw-man" in state court, and their action was removed to federal court. *Id.*  The trustee made a settlement with the "straw-man" conditioned on a finding by the district court that the debtor (and not his family) had standing to enforce the "straw-man" agreement. *Id.*  The district court conducted an evidentiary hearing on this issue, considering a "wide range of evidence from all concerned parties." *Id.* at 1339.  Further, the district court put Christo's family on notice that the outcome of the hearing could have preclusive effect on them by "making clear that 'this proceeding could result in an order granting the motion to approve settlement, and ultimately, preclusion of any parties from pursuing claims . . . .'" *Id.* at 1339 & n. 48.  After hearing "extensive evidence," the district court made factual findings "and wrote a substantial order in which it explained its findings," *id.* at 1339, that no agreement existed and that, if an agreement did exist, then the debtor, but not his family, could enforce the agreement. *Id.* at 1338.  The district court then referred to the bankruptcy court whether the proposed settlement between the trustee and the "straw-man" should be approved. *Id.* at 1335.  The bankruptcy court recommended approval based upon the district court's factual findings, and the district court adopted this recommendation in a final order that approved the settlement. *Id.* at 1339.  The district court next ruled that Christo's family could not sue on the agreement based upon the findings relied upon by the bankruptcy court to approve the trustee's settlement. *Id.*  On appeal, the Eleventh Circuit held that the final order approving the settlement was "sufficiently firm" insofar as the factual findings concerning the "straw-man" agreement, and affirmed dismissal of the action by the Christo family based upon the defense of collateral estoppel. *Id.* at 1339-40.

***No evidentiary hearing:*** Unlike *Christo*, there was no evidentiary hearing prior to the ruling in *Asia Pacific*.  The district court did not have the opportunity to review all of the evidence before

this court but merely snippets of inconclusive written discovery. The Federal Circuit has suggested that in the case of a Rule 56 motion a relevant issue is whether oral argument was permitted. *See RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1262 (Fed. Cir. 2003) ("there is no evidence that an evidentiary hearing was conducted . . . . [T]he Virginia district court did not even entertain oral argument"); *Dana*, 342 F.3d at 1325. The docket sheet in *Asia Pacific* reveals that oral argument was conducted on three summary judgment motions simultaneously. (*Defendants' Statement*, Exh. K, D.E. #132.) It further appears from not only the ruling, 676 F. Supp. 2d at 923 n.4, but also the paucity of Coach's opposition on this issue (*Plaintiff's Statement*, Exh. E, p. 10), that the issue of whether the '589 Reg. covered sunglasses was not fully litigated in *Asia Pacific*. [5]

***No warning of preclusive effect:*** One explanation for Coach's silence was its failure to apprehend that a partial summary judgment could have any "preclusive effect." In many of the nation's courts, including California, this was to be expected. *See supra* note 5. *See generally* 21A *Federal Procedure* § 51.229 (Sept. 2010) ("For claim preclusion purposes, a partial summary judgment does not constitute a final judgment on the merits because it is interlocutory in nature."). Unlike *Christo*, 223 F. 3d at 1339, no warning was given, before or after the *Asia Pacific* decision, that the partial summary judgment on damages could have preclusive effect elsewhere. This factor has been considered in all of the decisions of the Eleventh and Federal Circuits post-*Christo*. *E.g.*, *Bayshore*, 471 F.3d at 1254 ("Unlike *Christo*, no signals of finality were sent to the

---

[5] Indeed, the only argument that Coach made in *Asia Pacific* related to the '589 Reg. was that ". . . Coach has federal registrations for the CC design, which appears on Defendant's sunglasses . . . ." (*Plaintiff's Statement*, Exh. E., p. 10) The precise question of whether the '589 Reg. covered "sunglasses," however, was not addressed, thus, leaving Judge Gutierrez with little choice but to deny Coach any damages under the Lanham Act based upon Sunglass Experts' argument, which was "not countered" by Coach. In reality, the *Asia Pacific* ruling on the coverage of the '589 Reg. looks much more like a default than a decision on the merits.

parties."); *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1324 ("Unlike in *Christo,* the parties were not on notice that the orders in the Virginia case could have preclusive effect elsewhere.").

***Partial summary judgment on damages never regarded as a final order:*** Finally, neither the court nor the litigants in *Asia Pacific* regarded the partial summary judgment as if it was a final ruling on the '589 Reg. or any other matter. Nor was there any reason for them to do so. The partial summary was not appealable, as it did not dispose of all claims. *Cheng v. Comm'r I.R.S.*, 878 F.2d 306, 309 (9th 1989); *accord Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 914 (11th Cir. 1996). Indeed, it was subject to revision at any time before a final judgment was entered. *Luben Indus., Inc. v. U.S.*, 707 F.2d 1037, 1040 (9th Cir. 1983); *accord Bodine v. Fed. Kemper Life Assurance Co.*, 912 F.2d 1373, 1376 (11th Cir. 1990). Unlike *Christo,* in which the factual finding that gave rise to the defense of collateral estoppel was the basis for a final order that approved a settlement, 223 F.3d at 1339, the order approving the parties' settlement in *Asia Pacific* does not mention, rely upon, or endorse in any manner the finding in footnote 4. In fact, the final order in *Asia Pacific* permanently enjoined Sunglass Experts from selling, without exception, "any unauthorized product" bearing the Signature "C" logo in the '589 Reg. (*Plaintiff's Statement*, ¶¶ 11(D)-(E).) Thus, nothing in *Asia Pacific* suggests that footnote 4 forever precludes Coach from suing to enforce its exclusive right under the '589 Reg. to use the Signature "C" mark on sunglasses.

**3. *The collateral estoppel defense will not serve judicial economy.***

If the defense of collateral estoppel were permitted, judicial economy would in no way be promoted. Regardless of whether the '589 Reg. includes sunglasses, the defendants are liable for their infringement and dilution of the Signature "C" mark. Injunctive relief and attorney's fees can be awarded for same, 15 U.S.C. §§ 1116(a), 1125(c)(1), 1117(a), and neither remedy is subject to the damages limitation in section 29 of the Lanham Act. 15 U.S.C. § 1111. *See Schroeder v.Lotito*,

747 F.2d 801, 802 (1st Cir. 1984) (attorneys fees recoverable regardless of whether registration symbol appears on goods). Certainly, an injunction is appropriate to ensure that infringing activities are not resumed. *See PetMed Express, Inc. v. Med.Pets.Com, Inc.*, 336 Supp. 2d 1213, 1223 (S.D. Fla. 2004) (Cohn, J.). Likewise, a fee award will deter future violations, penalize unlawful conduct, and compensate plaintiffs for their legal expenses. 336 F. Supp. 2d at 1222. Of course, the state law claims would also remain within this Court's pendent jurisdiction.[6]

**Conclusion**

The Motion should be denied. The '589 Reg. does cover sunglasses that display the Signature "C" mark. The collateral estoppel defense does not exist in this case because the ruling in *Asia Pacific* was not sufficiently firm to be afforded any preclusive effect here. Permitting the defendants to assert that defense now will in no way promote judicial economy. Coach asks the Court to see the Motion for what it is: a "last-ditch," "no holds barred" effort to avoid a jury trial on meritorious claims for which the defendants have no real defense.

WHEREFORE, the plaintiff, Coach Services, Inc., respectfully requests that the defendants' Motion for Reconsideration of the Court's Rule 56 order be denied in all respects, and that Coach be allowed such other and further relief to which it shows itself to be entitled.

[6] Because the '589 Reg. does cover sunglasses, Coach can pursue its counterfeiting claims as the limitation in section 29 is inapplicable to these claims. 15 U.SC. § 1117(c). "Thus, damages, including statutory damages, can be recovered for counterfeiting even if the registered mark's owner did not comply with the notice requirements of Lanham Act § 29." *McCarthy*, § 19.144, *followed in Furstenberg Studio v. Snyder*, Civ. 06-cv-1356, 2007 WL 1835276, *2 (E.D. Va. June 25, 2007); *see Cartier v. Aaron Farber, Inc.*, 512 F. Supp. 2d 165, 172 (S.D.N.Y. 2007); *see also Playboy Enters., Inc. v. Universal Tel-a-Talk, Inc.*, Civ.-96-6961, 1999 WL 285883, *2 (E.D. Pa. 1999). Also, if the jury finds the defendants have actual knowledge that Coach's mark was registered, Coach can recover damages despite the non-use of a registration symbol on its products.

Respectfully submitted,

Respectfully submitted,

Attorneys for Plaintiff, Coach Services, Inc.

Bennett Aiello Cohen & Fried
The Ingraham Building, Eighth Floor
25 Southeast Second Avenue
Miami, Florida 33131-1603
Phone: (305) 358-9011
Facsimile: (305) 358-9012
Email: paiello@bennettaiello.com

By: /s Paul Aiello
Paul Aiello, FBN 909033

**Certificate of Service**

I hereby certify that, on this the September 20, 2010, a true and correct copy of the foregoing document was served electronically (CM/ECF) upon the attorneys for the defendants, Robert Charles Kain, Jr., Esq. and Darren Joel Spielman, Esq., at Kain & Associates, Attorneys at Law, P.A., 900 SE Third Avenue, Suite 205, Fort Lauderdale, Florida 33316.

/s Paul Aiello